# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# ROCK ISLAND DIVISION

| | |
|---|---|
| KATHERINE OVERSTREET ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-4083 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is now before the Court on Plaintiff Katherine Overstreet's Motion for Summary Judgment and the Defendant Commissioner's Motion for Summary Affirmance. For the reasons set forth below, Overstreet's Motion for Summary Judgment [#13] is DENIED, and the Commissioner's Motion to Affirm [#15] is GRANTED.

## Background

Overstreet was born on January 24, 1958. (R857). She is 5'1 ½ '' tall and weighs approximately 146 pounds. (R857). She graduated from high school and completed two years of college. (R866). She has worked numerous jobs, including working on a production line and inspecting that production line, doing data entry, and acting as an administrative assistant. (R867-68). Overstreet was married on July 26, 2003, and has four children from a previous relationship. (R865, R873). Prior to the

date of her alleged injury onset of July 24, 2003[1], she was employed as a data entry clerk. (R858). Overstreet currently works part-time (approximately 24 hours per week) in customer care at the Moline Quad Cities Airport, where she drives airline passengers to their gates in a golf cart and checks to ensure passengers have their boarding passes. (R858-59).[2]

On May 7, 2003, Overstreet filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging that she became disabled due to ulcerative colitis, back pain, knee pain, kidney problems, hypertension, depression, and memory problems. (R22). Her applications were denied initially and on reconsideration. (R618, R624, R842, R848). Overstreet then requested a hearing before an administrative law judge ("ALJ"). (R628).

**Medical Evidence**

The medical evidence dated after July 2003, the month of the alleged disability onset, indicates that Overstreet had experienced symptoms such as severe cramping and abdominal pain (R781, R818, R830, R833); bloody stool (R819); and had been treated for ulcerative colitis (R795, R797). She received treatment for back and neck pain, for which she underwent physical therapy and was prescribed medication. (R745, R785-93, R828-33, R774, R776).

In November 2000, non-examining State Agency psychologist Patricia Beers, Ph.D. opined that Overstreet suffered from a depressive syndrome characterized by a

---

[1] At the December 8, 2005, administrative hearing, Overstreet amended her date of alleged disability onset from March 14, 2000, to July 24, 2003, because she had performed substantial gainful activity between those dates. (R856).
[2] The ALJ found that Overstreet had engaged in substantial gainful activity between January and December 2005, based on her earnings. (R27). Overstreet did not challenge and therefore waives any argument concerning this finding. Therefore, the period of alleged disability dates from July 24, 2003, through December 2004.

pervasive loss of interest in almost all activities, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (R485). She further opined that Overstreet was moderately limited in daily activities, in maintaining social functioning, and markedly limited in maintaining concentration, persistence or pace. (R492). However, at a later mental status evaluation, Overstreet was seen as able to understand, recall, and execute simple one-to-two-step instructions and carry out routine tasks. Her social skills were considered adequate and her adaptive capacities were deemed intact.[3] (R498). (Similar opinions were previously provided by a different State Agency psychologist. See R469-R477).

Overstreet had been referred to Brian Anseeuw, M.D., in March, 2001 for treatment of headaches and neck pain. (R753). In November, 2002, Dr. Anseeuw dismissed her from his care as he stated he felt he could not be effective. (R753). He stated that her pain is relatively unchanged and has been fairly chronic for the past six years. (R753). He noted that, in the past, he had suggested that Overstreet seek treatment at the Pain Clinic, but that she failed to follow through with both his and the Pain Clinic's recommendation to have an epidural injection. (R753). Dr. Answeeuw's treatment notes reflect that Overstreet's neurological and physical examination on November 9, 2002, was unchanged from the examination on August 23, 2001. (R753).

During a patient assessment at the Rock Island Clinic in May 2003, Overstreet was found to have limited cervical flexibility, reduced rotation of the cervical spine, reduced range of motion in her neck, and reduced strength in numerous muscles in her shoulders and upper extremities (R776, 791). This report indicated that Overstreet was

---

[3] The Court does not know when the later evaluation occurred but notes that the comment referring to the evaluation was on a document dated 11/9/2000.

referred to an orthopedic specialist in February 2003 but that she failed to keep that appointment. (R776).

In May 2003, Dr. K.N. Kacha opined that Overstreet could not sit or stand for "long periods of time." (R740). Dr. Kacha reported that Overstreet's symptoms included back and neck stiffness and tenderness. (R741). Dr. Kacha also noted that Overstreet could ambulate normally. (R742).

In July 2003, two non-examining State Agency physicians reviewed Overstreet's file and opined that she was limited to occasionally lifting 10 pounds, frequently lifting less than 10 pounds, standing and/ or walking for two hours in a work day, sitting about six hours in a work day, and that she must alternatively sit and stand to relieve pain or discomfort. (R807-R14). These doctors additionally opined that Overstreet could never climb ladders, ropes or scaffolds, and that she could only occasionally balance, stoop, kneel, crouch, or crawl. (R809).

**Administrative Hearing**

The administrative hearing was held before ALJ John P. Johnson on December 28, 2005, at which Overstreet appeared with her attorney and where both she and G. Brian Paprocki, a vocational expert, gave testimony. (R52-R88).

At that hearing, Overstreet testified that she stopped working at her data entry job in July 2003, and began her current position in customer care at the Moline Quad Cities airport in May 2004. (R858, R860).[4] She stated that at this job, she picked disabled airline passengers up in a golf cart to transport them to and from the ticket counter or gate and also placed them in wheelchairs. (R858-R859). Overstreet testified

---

[4] Overstreet makes reference that her "current position" is with the Moline Quad Cities airport. However, later in her testimony, she states that she is "unable to do the job." (R858, R860). The Court finds that the record is not clear as to whether Overstreet currently works in customer care.

4

that she worked 24 hours a week but her hours were extended if flights were delayed. (R878).

Overstreet stated that she suffered from ulcerative colitis and that she sometimes had "accidents" at work and, as a result, was unable to continue doing her job. (R860-61). She further stated that she had degenerative disk disease in her neck and severe pain in her neck and lower back. (R861-R862). Overstreet testified that she could walk ½ a block at most, stand less than two minutes before she would have to shift moving from one leg to the other and would experience pain in her thigh and hip. (R872). Overstreet stated that she could sit but needed to move around, and that she could lift about four pounds. (R872, R874). She testified that she had high blood pressure, had been experiencing a lot of headaches, and had trouble keeping her mind on things because she would get depressed and her mind would drift. (R874-R875). Overstreet took medications for the colitis and back pain and Excedrin for her headaches. (R862, 865).

Paprocki testified at the hearing after reviewing the record and listening to Overstreet's testimony. (R879). He presented a chart summarizing Overstreet's past relevant work (R700) and testified that his descriptions were based upon specific job titles and codes within the Dictionary of Occupational Titles ("DOT"). (R882).

The ALJ asked Paprocki two hypothetical questions. The first hypothetical involved an individual with Overstreet's vocational factors of age, education and work experience, and a residual functional capacity ("RFC") for work that required lifting/carrying up to 10 pounds, sitting and standing for up to six hours in an eight hour day with a sit/ stand option every hour, and only occasionally bending, squatting, and crawling. (R884). The hypothetical question also assumed that such an individual

5

should avoid climbing, rapid changes in position, sunlight, unprotected heights, hazardous moving machinery, and excessive humidity and cold. (R884). Still further, the hypothetical question assumed the individual could perform work of the same skill, complexity, and detail level as performed by Overstreet in the past. (R884). Finally, the hypothetical question assumed that the individual required access to a restroom. (R884). Paprocki testified that such a hypothetical individual could perform Overstreet's past relevant work as a data entry clerk and administrative assistant (as generally performed). (R885).

The second hypothetical assumed an individual with the same limitations as the first hypothetical, except that this person could lift less than four pounds, stand or sit for only two minutes at a time, walk for less than half a block this time, and perform only occasional bending, stooping, squatting, kneeling, crawling, or crawling. (R885). Additionally, this hypothetical individual could not perform work that required constant, close attention to detail. (R886). Paprocki testified that such an individual could not perform Overstreet's past relevant work (either as performed or generally performed) but could perform the job of a surveillance system monitor (300 jobs statewide, 24,000 nationwide). (R886).

On June 29, 2006, ALJ Johnson issued his decision, which denied Overstreet's application on grounds that, pursuant to Step Four of the sequential analysis, she was not disabled, because she could perform her past relevant work as a data entry clerk and as an administrative assistant. (R18-R27). The ALJ found that Overstreet suffered from a combination of impairments that are severe, including colitis, with a history of ulcerative colitis, degenerative disc disease of the cervical spine, degenerative changes in the lumbar spine, history of fibromyalgia, hypertension and allegations of a medically

determinable impairment resulting in complaints of chronic headaches, and a history of depression. (R22). However, the ALJ determined that Overstreet did not have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (R22-R23).

The ALJ noted that radiographic studies showed no acute cervical abnormality and only some degenerative disc narrowing and that she was exercising more regularly and getting massages to relieve her back pain. (R23). In assessing her mental impairments under the psychiatric review technique, the ALJ concluded that Overstreet had no restrictions in activities of daily living or social functioning, mild difficulties in maintaining concentration, persistence or pace, and there were no episodes of decompensation. (R23).

The ALJ concluded that Overstreet's allegations of limitation were inconsistent with her reported activities and stated that her complaints were not supported by the medical record and that her job in customer care suggests that her conditions do not significantly limit her activities. (R25). The ALJ noted that no physician or treating doctor provided opinions or supporting treating recommendations suggesting total disability. (R25).

After reviewing the testimony and evidence of record, the ALJ determined that Overstreet had a residual functional capacity to perform the mental and physical requirements of work, with the following limitations: to lift 10 pounds occasionally, to stand or walk for two hours total in an eight-hour day and sit six hours in an eight hour day. (R25). The ALJ found that Overstreet would need to alternate sitting and standing at one hour intervals. (R25). In addition, the ALJ determined that Overstreet could occasionally bend, squat, and crawl, but should avoid climbing and rapid changes of

position. (R25-R26). The ALJ noted that although Overstreet testified that she could stand less than two minutes and sit less than two minutes, Overstreet was able to sit for the period of the hearing, lasting approximately one hour. (R25). The ALJ stated that Overstreet should avoid sunlight and should not work at unprotected heights or around hazardous, moving machinery. (R26). The ALJ found that Overstreet must have access to the restroom. (R26). The ALJ concluded that Overstreet could perform work at the same skill, complexity, and detail level as she had in the past and that she could return to work in data entry or as an administrative assistant. (R26). Therefore, the ALJ concluded that Overstreet was not under a disability as defined in the Social Security Act, as amended. (R26).

Overstreet submitted a Request for Review and on October 12, 2007, the Appeals Council declined review of Overstreet's claim, and the ALJ's decision became the final decision of the Commissioner. (R14-R16). This appeal followed and Overstreet filed her Complaint in this Court on December 13, 2007. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## Discussion

In order to be entitled to SSI and DIB, a plaintiff must show that her inability to work is medical in nature. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42

U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed?; (2) is the plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps one through four. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show that the plaintiff has the ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether

the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *Imani v. Heckler*, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988 (1986).

In her appeal, Overstreet raises essentially three claims: (1) that the ALJ ignored significant evidence concerning her depression; (2) that the ALJ failed to follow the requirements of SSR 00-4p; and (3) that the ALJ's RFC assessment and credibility determinations violate the requirements of SSR-96-7p and SSR96-8p. Each of these arguments will be addressed in turn.

**1.    Psychologist Opinions**

Overstreet argues that the ALJ ignored significant evidence concerning her depression by not discussing the psychologist opinions from July and November 2000. While it is generally true that RFC assessments by State Agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in an ALJ decision, these two opinions were rendered three years before the amended date of alleged disability onset—July 24, 2003—and issued prior to Overstreet's employment as an administrative assistant, employment doing data entry, and employment at the airport. These two opinions were admitted into evidence because Overstreet had initially alleged that her disability began in March 2000. The ALJ stated in his decision that the evidence created prior to the alleged onset date was

limited to the purpose of providing a foundation for consideration of Overstreet's current disability status. (R22).

The record before the ALJ contains no medical opinions or treatment notes indicating that Overstreet, during the relevant period, received any mental health treatment, nor are there any current medical reports corroborating that Overstreet continued to suffer the limitations referenced in 2000. The Court finds that the ALJ did not commit reversible error in declining to discuss or give weight to the dated opinions.

**2.     The Requirements of SSR 00-4p**

Overstreet notes the ALJ's hypothetical question to Paprocki included the need to be able to sit and stand in one-hour intervals and accessibility to the restroom while on the job but the DOT description of the data entry and administrative assistant jobs do not discuss these limitations. Overstreet argues that it was error for the ALJ to fail to ask Paprocki whether or not Paprocki's opinion conflicted with the DOT, and if there was a conflict, requiring the ALJ to explain how Overstreet could perform her past relevant work, despite the conflict.

Paprocki testified that, in making his chart describing Overstreet's past work activity, he utilized the DOT for the particular job titles and code numbers. (R882). Paprocki clarified that the DOT job descriptions he identified for Overstreet would accommodate a sit/ stand option that required hourly changes, but not if the positional changes had to be every two minutes. (R885-R886) ("And I would think that if [Overstreet] were able to take a short break after an hour, that she'd be able to do the sedentary work"). Overstreet acknowledges in her brief that the DOT does not address the applicability of a sit/ stand option or the need to access a restroom and Overstreet fails to identify why there would be a conflict. Further, Overstreet's attorney cross-

11

examined Paprocki on other potential conflicts with the DOT but did not raise any concerns at the hearing as to the sit/ stand restriction. The ALJ properly relied on this testimony to make its limitation determinations.

Therefore, the Court finds that that there was no conflict between the DOT job descriptions and Paprocki's testimony of work that Overstreet could perform and, therefore, the ALJ did not have to explain in his decision how the "conflict" was resolved under SSR 00-4p.

### 3. RFC Assessment and Credibility Determination

Overstreet challenges the ALJ's RFC and credibility findings. Specifically, she argues that the ALJ erroneously rejected her testimony that she could only sit for two minutes at a time, and did not discuss the appropriate factors relating to her pain complaints and allegations of headache symptoms. Overstreet additionally argues that the ALJ should not have relied upon her ability to perform part-time work in making his determinations regarding her disability.

Factors relevant to a claimant's symptoms include daily activities, location, duration, intensity, and frequency of pain or other symptoms, dosage and effectiveness of medication, and other measures taken to relieve the pain or symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii). While the ALJ may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, he may consider that as probative of the claimant's credibility. *Powers v. Apfel*, 207 F.3d 431, 435 (7th 2000).

Here, the ALJ's conclusions were based on reviewing the medical evidence, listening to testimony at the hearing, considering Overstreet's activities including exercising, and her employment at the airport. The ALJ noted that no medical opinions

12

suggested that Overstreet was disabled or had significant limitations inconsistent with the RFC findings, and that the treatment notes did not support the substantial degree of pain and limitation she alleged. (R25). The ALJ concluded that Overstreet's limitation allegations were inconsistent with her reported activities and stated that her complaints were not supported by the medical record and that her job in customer care and her ability to exercise suggest that her conditions do not significantly limit her activities. (R25).

The ALJ concluded that Overstreet needed to be able to sit and stand in one-hour intervals and have access to the restroom while on the job. The ALJ reasonably held that Overstreet could perform work that accommodated a sit / stand option with hourly position changes, after personally observing that she was able to sit for the period of the hearing—approximately one hour in length. See *Powers*, 207 F.3d at 436 (endorsing the role of observation in determining credibility). The ALJ rejected Overstreet's contention that she could only sit for two minutes at a time after she failed to cite a medical opinion or other medical evidence supporting her contention that she required position changes every few minutes-- Dr. Kacha merely opined that Overstreet could not sit or stand for "long periods of time." (R740). The Court finds that, to the extent Overstreet had mobility limitations, the ALJ accommodated them by adopting the State Agency physician's opinion that she could perform sedentary work. In making this finding, the ALJ did not summarily reject all of Overstreet's limitations and the ALJ's reasons for not adopting all of her limitations were adequately set forth in his decision.

In addition, Overstreet argues that the ALJ erred in considering her employment at the airport as a basis to conclude that her condition did not significantly limit her activities and, to support this contention, cites *Henderson v. Barnhart,* 349 F.3d 434,

435-436 (7th Cir. 2003).  The Court finds *Henderson* distinguishable because there, the sole ground on which the ALJ denied benefits was that he thought the plaintiff capable of doing his previous work as a schoolbus driver and later a medical courier driver. *Id.* at 435.  Here, the ALJ came to his conclusion after assessing the objective medical evidence (of which none opined that Overstreet was completely disabled) and the testimony at the hearing, including determining that not all of Overstreet's complaints were credible.  The fact that Overstreet was able to find other employment was only one factor that the ALJ used to determine that her condition was not as limiting as she claimed.

The Court finds that the ALJ's determinations regarding Overstreet's RFC and credibility are reasonably drawn from the record and are supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, Overstreet's Motion for Summary Judgment [#13] is DENIED, and the Commissioner's Motion to Affirm [#15] is GRANTED.

ENTERED this 20th of January, 2009.

/s Michael M. Mihm
Michael M. Mihm
United States District Judge